**BEACON FRUIT & PRODUCE CO.,
Inc., et al.**

v.

**H. HARRIS & CO., Inc., et al.
Civ. A. No. 56–172.**

United States District Court
D. Massachusetts.

May 28, 1957.

Lawrence R. Cohen, Joseph Aborn, Boston, Mass., Sigmund Timberg, Wash-

ington, D. C., Albert R. Mezoff, Charles George, Arthur L. Brown, Boston, Mass., for plaintiffs.

John L. Saltonstall, Jr., Richard Maguire, Thomas J. Carens, I. J. Silverman, Boston, Mass., for defendants.

FORD, District Judge.

This is an action under the antitrust laws to recover damages for alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. The plaintiffs are dealers in fruits and vegetables. The defendants who now remain in the case are H. Harris & Co., Inc., a Massachusetts corporation (hereinafter called Harris) and three individuals, Albertson, Pontefract and Giovino, who are the directors and principal stockholders of Harris, Pontefract being president of the corporation and Albertson its treasurer.

The business of Harris was conducted for many years by a partnership. In 1951 the present corporation was formed (originally under the name of Fruit Auction, Inc.) by a group of customers of the partnership, with the individual defendants as principal shareholders, which purchased the partnership assets and thereafter carried on the business.

Harris conducts an auction market for the sale of citrus and deciduous fruits by shippers or receivers who act as agents for the shippers. These sellers notify Harris of shipments of produce they wish to sell. Harris then arranges with the carriers for delivery to its warehouse, unloads the produce, displays sample packages, and prepares a catalogue of items offered for sale. All produce is sold at auction, subject to withdrawal by the seller if a minimum price fixed by the seller is not bid. Any person who meets certain credit qualifications may buy. Plaintiffs are all buyers at these auctions. Upon the sale of the produce Harris keeps a record of the transaction, pays the seller, supervises delivery to the buyers, and then bills the buyers and collects from them.

Harris charges each seller a commission based on a percentage of the selling price of its produce. It also collects from the buyer a charge of five cents for each individual package purchased, regardless of the size and contents of the package. It is this five-cent charge of which plaintiffs complain.

Each side has moved here for summary judgment. While there is no complete agreement on the facts, it appears to be the contention of each party that on the basis of certain facts asserted by it and not controverted by the opposing parties, it is entitled to judgment as a matter of law and that other facts alleged by the opposing parties are immaterial to the decisive issues of the case.

On consideration of the contentions advanced by the parties, it does not appear that the issues here resolve themselves into clear-cut questions of law which can be resolved on the basis of a selection of facts which are not controverted, but rather that the solution of each of the issues involved requires a further development of the factual background.

The first charge of plaintiffs is that defendants have engaged in a combination or conspiracy in restraint of trade in violation of § 1 of the Act. Defendants argue that there can be no conspiracy among these defendants since they are a corporation and its principal officers and directors. It is generally true that the acts of the agents of a corporation in carrying out their duties of formulating the policy of the corporation do not constitute a conspiracy violative of § 1 of the Act. Nelson Radio & Supply Co. v. Motorola, 5 Cir., 200 F. 2d 911, 914. But plaintiffs do not rely merely on this, but claim they can prove that in fact the individual defendants here conspired to form the defendant corporation as a mere instrumentality to take over the partnership business as a step in securing control of the market and imposing a restraint of trade for their individual benefit. The validity of

this contention depends on proof of facts which defendants do not concede.

■■ Similarly defendants say there has been no restraint of trade because statistics show business has increased and many of the individual plaintiffs have prospered in recent years. This is not conclusive. On the facts now before the court it cannot be said whether because of other factors business may not have been profitable in spite of restraints. So also the conflicting contentions as to whether or not the five-cent charge has affected the price at which plaintiffs can resell their fruit, or the profits realized by them on resale require a knowledge of more of the facts as to how their business is carried on. Defendants also argue that if there is any restraint of trade imposed, it is reasonable. But assuming that, as defendants claim, they must have the revenue produced by the five-cent charge or its equivalent from some other source, the court has no facts on which to decide whether it would be possible for them to increase their charges to the shippers or whether it would be practicable to collect a charge from the buyers on another basis than that of a flat rate per package.

■ Plaintiffs' position is that the collection of any charge from the buyers is illegal. Again there are not enough facts before the court to enable it to make any such sweeping ruling at this stage of the proceedings, or to hold that, even if the charge is illegal, it creates a restraint of trade in violation of the Sherman Act.

■■ The complaint further charges illegal monopolizing on the part of defendants in violation of § 2 of the Act. To decide whether defendants have a monopoly it must first be decided what the limits are of the relevant competitive market in which defendants offer their services. United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 394, 76 S.Ct. 994, 100 L.Ed. 1264. The parties are not agreed on what the relevant market is. The complaint refers to the market in New England for the sale of citrus and deciduous fruit. Plaintiffs now seem to rely on a market limited to the sale of one particular brand of citrus fruits at auction in Boston. Defendants argue that the relevant market should be considered as including all sales of citrus fruits at less than carload lots, whether by auction or negotiated sale. To decide the proper limits of the market, it must be determined whether the alleged competitors offer a reasonable substitute for the services offered by defendants. United States v. E. I. Du Pont De Nemours & Co., supra. There are no facts now before the court on which it can decide this question.

The case, therefore, is not at least at the present stage of the proceedings a proper one for summary judgment and the motions of plaintiffs and defendants for summary judgment are denied without prejudice.